UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| RICHARD RALSER | * | CIVIL ACTION |
|---|---|---|
| | * | |
| versus | * | No. 13-2799 |
| | * | |
| WINN DIXIE STORES, INC. A/K/A<br>BI-LO HOLDINGS | * | SECTION "L" (1) |

## ORDER & REASONS

Before the Court is Defendant Winn Dixie Stores, Inc.'s ("Winn Dixie") Motion for Summary Judgment, (Rec. Doc. 4). The Court has reviewed the briefs and the applicable law and, after hearing oral argument on the motion, now issues this Order & Reasons.

### I. BACKGROUND

This case involves a claim made by Plaintiff Richard Ralser against Winn Dixie under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601. According to Ralser's complaint, filed on May 8, 2013, Ralser was hired by Winn Dixie in April 2011. (Rec. Docs. 1 at 2). Ralser claims that on April 30, 2012 he informed his supervisors that he needed to take a medical leave of absence because his treating orthopedic specialist recommended that he undergo a hip replacement surgery. (Rec. Doc. 1 at 2). Ralser claims that he followed the Winn Dixie leave policy and contacted the Human Resources department in order to obtain an FMLA leave package. Ralser claims that his "Leave of Absence Request form" satisfied the FMLA serious health condition requirement. (Rec. Doc. 1 at 3). According to Ralser, he provided his physician's notice to Winn Dixie on May 7, 2012 and on May 8, 2012 he was terminated. (Rec. Doc. 1 at 3). Ralser alleges that Winn Dixie "knowingly, willfully, and recklessly violated the

1

FMLA and its own company policy by terminating Ralser for attempting to take a personal medical leave of absence." (Rec. Doc. 1 at 3).

## II. PRESENT MOTION

On June 3, 2013, Winn Dixie responded by filing the present Motion for Summary Judgment. (Rec. Doc. 4). Winn Dixie claims that summary judgment should be granted because Ralser signed a general waiver and release as to all claims asserted or unasserted against Winn Dixie, including federal law claims. (Rec. Doc. 4-1 at 2). This waiver was the product of a settlement reached in a separate lawsuit—Ralser's workers' compensation case. Ralser signed the waiver on May 6, 2013, two days before the present lawsuit was filed. (Rec. Doc. 4-1 at 2). Ralser had two attorneys: one who handled the workers' compensation claim and another rwho handled his FMLA claim.

In opposition to this motion, Ralser informed the Court that his counsel was attempting to set aside the settlement agreement before the Office of Workers' Compensation ("OWC") court. (Rec. Doc. 8 at 2). Plaintiff asked this Court to postpone the submission date of this motion until after the workers' compensation court ruled on the motion to set aside the settlement. (Rec. Doc. 8 at 2).

The Court continued the submission date of the motion for summary judgment and Ralser periodically updated the Court regarding the status of the proceedings before the OWC judge. (Rec. Docs. 16, 19, 24, 27). In November 2013, Ralser advised this Court that the OWC judge denied his motion to set aside the settlement. (Rec. Doc. 30). At that time, the Court considered Winn Dixie's motion for summary judgment. However, because no discovery had been conducted in this case, the Court deferred ruling on the motion and gave the parties additional time to conduct discovery "on the issues of potential fraudulent inducement and

misrepresentation." (Rec. Doc. 31 at 4) (citing Rec. Doc. 8 at 8). After the discovery was completed, the Court established a new briefing schedule for the motion.

      A.      **Ralser's Sixth Supplemental Memorandum in Opposition**

On June 25, 2014, Ralser filed his sixth supplemental memorandum in opposition. (Rec. Doc. 36). Ralser claims that because the general waiver was executed in connection with a Louisiana workers' compensation claim, Louisiana law applies in evaluating the enforceability of the waiver. (Rec. Doc. 36 at 4). Ralser points out that the Joint Petition for Compromise in the workers' compensation court limits the compromise to claims "arising out of said injury within the course and scope of his employment related to the on-the-job accident of March 14, 2012." (Rec. Doc. 36 at 5) (citing Rec. Doc. 4-3 at 7). By contrast, the general waiver and release included broader language indicating that Ralser waived any and all claims against Winn Dixie. (Rec. Doc. 36 at 6). Ralser claims that these documents created confusion and caused him to believe that he was only settling his workers' compensation claim. Citing Louisiana Civil Code article 1949, Ralser claims that a unilateral mistake, such as this, can cause a contract to be rescinded when that mistake concerns a fact that was a principal cause for making the contract and where the other party knew or should have known about that cause. (Rec. Doc. 36 at 4-5) (citing *Pioneer Exploration Ltd. v. Rutherford*, 2008 WL 1711411, at *3 (W.D. La. 4/11/08)). Ralser claims that had he known he was waiving his FMLA claim, he would not have signed the agreement. Ralser also claims that his nearly contemporaneous filing of the FMLA claim proves that he only intended to settle his workers' compensation claim. Further, Ralser argues that the filing of his FMLA claim put Winn Dixie on notice that Ralser's error was a principal cause of the agreement. (Rec. Doc. 36 at 6).

Ralser also claims that Winn Dixie knowingly and willfully concealed his error from him

3

until after Winn Dixie was able to get approval of the settlement documents from the workers' compensation court. (Rec. Doc. 36 at 7). Ralser points out that Winn Dixie's legal department learned of his FMLA lawsuit on May 8, 2013, the date that it was filed. (Rec. Doc. 36 at 3). Ralser claims that despite this knowledge, Winn Dixie proceeded to file the signed settlement documents with the OWC, which approved the settlement on May 14, 2013. (Rec. Doc. 36 at 4). Ralser points out that it was not until the day after this approval, on May 15, 2013, that the Winn Dixie legal department contacted Ralser's attorney to advise him that Ralser had released all claims against Winn Dixie. (Rec. Doc. 36 at 4). Ralser argues that Winn Dixie's silence, after it learned of Ralser's lawsuit and intention not to settle his FMLA claim, constituted fraud under Louisiana law.

### B. Winn Dixie's Reply

First, Winn Dixie contends that because the waiver and release is being enforced against an FMLA claim, federal common law applies to the interpretation of that waiver. (Rec. Doc. 39 at 1). Winn Dixie also argues that the general waiver and release was not part of the workers' compensation settlement and, therefore, there is no reason for state law to apply. Winn Dixie cites the OWC judge who presided over the settlement, who stated that "the [general waiver and release] is not part of the settlement documents reviewed or approved by the Workers' Compensation judge." (Rec. Doc. 39 at 2).

Turning to federal common law, Winn Dixie claims that Ralser bears the burden of demonstrating that "the release was invalid because of fraud, duress, material mistake, or some other defense." (Rec. Doc. 39 at 3) (citing *Clayton v. Conoco Phillips Co.*, 2013 U.S. App. Lexis 13632, at *27 (5th Cir. 2013)). Winn Dixie argues that Ralser cannot claim error or mistake because the Court only deferred ruling on the motion to allow Ralser to conduct discovery on the

4

issues of fraudulent inducement and misrepresentation, as requested by Ralser. (Rec. Doc. 39 at 3). Further, Winn Dixie argues that a settlement agreement cannot be avoided based on unilateral mistake.

Winn Dixie also argues that Ralser bore the risk of a mistake because, at most, he executed the general waiver and release with "conscious ignorance." (Rec. Doc. 39 at 5). Winn Dixie points out that his workers' compensation attorney was given the general waiver and release more than two weeks before Ralser signed it. According to Winn Dixie, both Ralser and his attorney had ample time to review the release before signing it. Further, Ralser testified that his lawyer read the agreement to him before he signed it. (Rec. Doc. 39 at 5). Winn Dixie claims that the present situation is a product of Ralser's failure to inform his two attorneys of the existence of each other. Winn Dixie argues that this error does not allow him to void the agreement that he signed. (Rec. Doc. 39 at 6).

With respect to Ralser's claim of fraud, Winn Dixie claims that the general waiver and release became effective on the day that Ralser signed, regardless of the result before the workers' compensation court. Winn Dixie argues that it had no legal obligation to inform Ralser's FMLA attorney of the waiver and that its failure to do so does not constitute fraud.

Winn Dixie asks the Court to grant summary judgment in its favor and dismiss Ralser's claims because he signed an enforceable waiver and release of all claims against Winn Dixie. (Rec. Doc. 39 at 10).

C.  **Ralser's Response**

Ralser briefly responds to point out that if, as Winn Dixie contends, the release and waiver was not part of the workers' compensation settlement agreement, then there was no consideration for the general release and waiver. Second, Ralser points out that in his initial

5

opposition he claimed that the competing settlement agreement misled him and he mistakenly signed the waiver and release even though he had no intention of waiving his FMLA claim. Ralser argues that this is not a new argument and Winn Dixie had notice of this potential issue. Third, Ralser points out that Winn Dixie was placed on written notice of that counsel was representing him in his FMLA lawsuit long before the workers' compensation claim was ever filed and settled.

### III. LAW & ANALYSIS

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id*. When considering a motion for summary judgment, the district court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986).

**A. Choice of Law**

In *Fulgence v. J. Ray McDermott & Co.*, the United States Court of Appeals for the Fifth Circuit addressed the question "whether state or federal law determines the validity of an oral settlement agreement in a Title VII employment discrimination suit." 662 F.2d 1207, 1208 (5th Cir. 1981). The Fifth Circuit explained that since the case "deals with the operation of a Congressional statutory scheme, the federal courts are competent to determine whether a

settlement exists without resort to state law." *Id*. at 1209. The Court determined that "creation of a federal rule rather than absorption of a state rule is appropriate where, as here, the rights of the litigants and the operative legal policies derive from a federal source." *Id.* Subsequently, in *O'Hare v. Global Natural Resources, Inc.*, the Fifth Circuit determined that federal common law should be used to determine the validity of a settlement agreement that the plaintiff entered into after he was terminated by his employer. 898 F.2d 1015, 1017 (5th Cir. 1990). The Fifth Circuit explained that "[a]lthough there is universal recognition that a waiver of federal rights must be knowing and voluntary, there is some disagreement as to the proper source of law for determining the validity of the waiver." *Id.* The Fifth Circuit determined that "[t]he better rule is to fashion a federal common law to determine this issue because the policies embedded in the federal statute should not be frustrated by state law." *Id.*; *see also Rogers v. Gen. Elec. Co.*, 781 F.2d 452, 454-55 (5th Cir. 1986) (citing *Northern Oil Co. v. Standard Oil Co. of California*, 761 F.2d 699, 705 (Temp. Emer. Ct. App. 1985) (federal law governs all questions relating to purported releases of federal statutory causes of action)); *Williams v. Phillips Petroleum Co*., 23 F.3d 930, 935 (5th Cir. 1994) ("Normally the release of federal claims is governed by federal law."). Since Winn Dixie claims that Ralser is precluded from bringing this federal lawsuit because he waived all federal causes of action, the Court finds that federal common law should govern this Court's interpretation of that waiver and release agreement.

**B. General Waiver and Release**

The Court of Appeals for the Fifth Circuit recently explained that courts employ a "two-step burden-shifting framework to assess a waiver's validity and enforceability." *Clayton v. ConocoPhillips Co.*, 722 F.3d 279, 292 (5th Cir. 2013).

> Once a party establishes that his opponent signed a release that

7

addressed the claims at issue, received adequate consideration, and breached the release, the opponent has the burden of demonstrating that the release was invalid because of fraud, duress, material mistake, or some other defense. We examine the totality of circumstances to determine whether the releaser has established an appropriate defense.

*Id.* at 292. Accordingly, Winn Dixie is required to make a prima facie showing that Ralser received adequate consideration for the general release and waiver. *See Id.* ("Under *Williams*, [Defendant] first must make a prima facie showing that [Plaintiff] received adequate consideration for the Waiver."). Winn Dixie has made no such showing.

When Ralser settled his workers' compensation claim, he signed two different documents. The first was called the "Joint Petition for Compromise." The document describes a work-related injury that Ralser allegedly sustained while he was employed by Winn Dixie. The document provides that

> To avoid further litigation, the parties have agreed to fully compromise and finally resolve all issues of law and fact arising out of said injury within the course and scope of his employment related to the on-the-job accident of March 14, 2012. Employee has agreed to accept FIFTEEN THOUSAND DOLLARS AND ZERO CENTS ($15,000.00), as full and final settlement of this claim and the payment of any and all outstanding and previously pre-approved medical expenses causally related to the alleged work-related accident that occurred within the course and scope of employmet.[1]

(Rec. Doc. 4-3 at 7). The document further provides that the agreement constitutes a "release of any and all liability which may exist by or on behalf of the said Employer . . . and all other amounts and claims, if any, which may now be due or in the future by said Employer, Winn Dixie Montgomery, Inc. . . . by reason of the injury alleged to have occurred on or about March

14, 2012, whether said liability exists or arises under the laws of Louisiana, or of any foreign entity . . ." (Rec. Doc. 4-3 at 8-9). The document states that "[t]he parties agree that there are no collateral agreements, oral or written, not expressed herein, and that this compromise agreement contains the entire settlement between the parties." (Rec. Doc. 4-3 at 8). Ralser signed a notarized "Verification" on May 6, 2013, which states that he voluntarily entered into the compromise and agreed to its contents. (Rec. Doc. 4-3 at 11). The Joint Petition for Compromise was submitted to the OWC and was approved on May 14, 2013. (Rec. Doc. 4-3 at 25). As the Petition clearly states, in exchange for $15,000 and payment of medical expenses, Ralser agreed to release Winn Dixie of all potential liability arising out of or relating to his work-related injury.

On the same day that he signed the Joint Petition for Compromise, Ralser also signed a document entitled "Release of All Claims, Waiver of Employment and Confidentiality Commitment." (Rec. Doc. 4-4 at 2). This document provides that

> The undersigned, RICHARD RALSER, hereinafter referred to as "Employee/Claimant," for good and valuable consideration of FIFTEEN THOUSAND AND NO/100 ($15,000.00), and the payment of any and all outstanding and previously pre-approved medical expenses causally related to the alleged work-related accident that occurred within the course and scope of employment, the receipt and sufficiency of which is expressly acknowledged and confessed, does hereby release and forever discharged Employer, WINN DIXIE MONTGOMERY, LLC . . . from any and all claims, demands, causes of action . . .
> . . .
> The Employee/Claimant hereby promises not to file . . . any state or federal lawsuit or any federal or municipal administrative charge or complaint against Employer and hereby waives and releases any and all claims, rights, and causes of action, in law or

---

[1] The copy of the Joint Petition for Compromise that was provided to the Court does not reveal the amount of the settlement, as the amount is blacked-out. However, Winn Dixie later revealed that the amount was $15,000. (Rec. Doc. 22 at 3).

9

> equity of any kind, whatsoever, which his heirs, executors, administrators, assigns, or other legal representatives have or may have against Employer including, but not limited to, those claims, rights, and causes of action based on any federal, state or local law, statute, ordinance, administrative regulation, public policy, or Executive Order . . .

(Rec. Doc. 4-4 at 3). As written, this waiver and release is much broader than the Joint Petition for Compromise, as it is not limited to claims arising out of Ralser's work related injury. Instead, this document purports to waive *all* claims against Winn Dixie, no matter what the source of those claims.

Winn Dixie asserts that this general waiver and release was not part of the workers' compensation settlement. (Rec. Doc. 39 at 2). Because it is not part of the workers' compensation settlement, Winn Dixie argues that the general waiver and release became effective on the day that Ralser signed it—May 6, 2013. (Rec. Doc. 39 at 8). Winn Dixie argues that the general waiver and release did not have to be approved by the OWC. Furthermore, Winn Dixie points out that the OWC judge does not even review the general waiver and release before approving the Joint Petition for Compromise. (Rec. Doc. 39 at 2).

The Court finds that the general waiver and release is invalid for lack of consideration. Winn Dixie gave Ralser no additional compensation for signing the general waiver and release, which was not part of the workers' compensation settlement and which extended the release to all causes of action regardless of their relationship to his workers' compensation claim. According to Winn Dixie's theory, Winn Dixie received the additional benefit of being released from *all* liability, no matter what the source, and gave Ralser nothing in exchange. Winn Dixie cannot get something for nothing.

This would be a much different case if Ralser's present lawsuit had some relationship to

his work-related injury. Ralser would be barred from bringing such a suit because he waived all claims arising out of that work-related injury in his workers' compensation settlement. Here, however, Ralser's present lawsuit under the FMLA has absolutely nothing to do with the work-related injury that was the subject of his previous settlement. The Court finds that the general waiver and release is invalid and that Ralser is not barred from bringing the present lawsuit.

## IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Winn Dixie's Motion for Summary Judgment (Rec. Doc. 4) is hereby **DENIED.**

New Orleans, Louisiana, this 28th day of July, 2014.

_____
UNITED STATES DISTRICT JUDGE