UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **RICHARD RALSER** | * | **CIVIL ACTION** |
| | * | |
| **versus** | * | **No. 13-2799** |
| | * | |
| **WINN DIXIE STORES, INC. A/K/A BI-LO HOLDINGS** | * | **SECTION "L" (1)** |

## ORDER & REASONS

Before the Court is Plaintiff Richard Ralser's Motion for Sanctions Based on the Spoliation of Evidence (Rec. Doc. 74). Having reviewed the parties' briefs and the applicable law, and having heard oral argument on the motion, the Court now issues this Order & Reasons.

### I. BACKGROUND

This case involves a claim made by Plaintiff Richard Ralser against Winn Dixie under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601. According to Ralser's complaint, filed on May 8, 2013, Ralser was hired by Winn Dixie in April 2011. (Rec. Docs. 1 at 2). Ralser claims that on April 30, 2012, he informed his supervisors that he needed to take a medical leave of absence because his treating orthopedic specialist recommended that he undergo a hip replacement surgery. (Rec. Doc. 1 at 2). Ralser claims that he followed the Winn Dixie leave policy and contacted the Human Resources department in order to obtain an FMLA leave package. Ralser claims that his "Leave of Absence Request form" satisfied the FMLA serious health condition requirement. (Rec. Doc. 1 at 3). According to Ralser, he provided his physician's notice to Winn Dixie on May 7, 2012 and on May 8, 2012 he was terminated. (Rec.

1

Doc. 1 at 3). Ralser alleges that Winn Dixie "knowingly, willfully, and recklessly violated the FMLA and its own company policy by terminating Ralser for attempting to take a personal medical leave of absence." (Rec. Doc. 1 at 3).

Following the Court's denial of Winn Dixie's Motion for Summary Judgment, Winn Dixie filed an Answer to Ralser's Complaint. (Rec. Doc. 46). Winn Dixie asserts a number of affirmative defenses. Winn Dixie contends that Ralser fails to state a claim under which relief can be granted and contends that the actions alleged are against corporate policy and upper management did not ratify those actions. (Rec. Doc. 46 at 5). Winn Dixie also contends that it would have taken the same action against Ralser absent a request for FMLA. (Rec. Doc. 46 at 5)

## II.   PRESENT MOTION

A brief recantation of facts is necessary for this motion. On April 30, 2012, Ralser emailed Karena Niblett, Ralser's supervisor, and requested FMLA leave for necessary hip surgery. (Rec. Doc. 74-4). Pursuant to Winn-Dixie policy, it is necessary to prepare and circulate an Executive Summary to document and recommend the termination of a store associate. (Rec. Doc. 74-6 at 4). At 11:31 p.m. on April 30, 2012, the same day Ralser requested FMLA leave, Niblett emailed an Executive Summary pertaining to Ralser's termination to Joey Medina, a Winn-Dixie regional vice-president, and to Timothy Darby, a Winn-Dixie human resources manager. (Rec. Doc. 74-5). The present dispute concerns the fact that Winn-Dixie no longer has access to the native version of the Executive Summary, which would show the date of the Executive Summary's creation, and the timing of *when* Niblett started Ralser's Executive Summary is crucial to Ralser's case. Ralser argues that Niblett prepared and sent the Executive Summary in response to his FMLA request, on the night of

2

April 30, 2012.  Winn-Dixie contends that the decision to terminate Ralser originated prior to Ralser's request, and Niblett testified that she began working on the Executive Summary after an unsatisfactory walk-through of Ralser's assigned store on April 19, 2012.  (Rec. Doc. 74-6 at 2). Niblett testified that Medina sent her another Executive Summary to use as a model.  (Rec. Doc. 77-4 at 4).  Niblett also testified that she believed she saved the Word document for a second time under a different name before she emailed the finalized Executive Summary.  (Rec. Doc. 74-6 at 5).

On February 2, 2015, Ralser requested the Executive Summary in its native format, but Winn-Dixie responded that it was unable to produce the original Word document.  (Rec. Doc. 74-9).  During Darby's deposition, however, Winn-Dixie represented that Darby was able to retrieve a copy of the Executive Summary as emailed to Darby from Niblett.  Winn-Dixie forwarded Ralser's counsel the email sent to Darby with the Executive Summary as an attachment, entitled "Executive Summary – RRalser(2).doc."   But as noted by Winn-Dixie's counsel, this attachment is not the Executive Summary in its native format.  Rather, the email included a copy of the Executive Summary and not the original document in its native format. (Rec. Doc. 74-10).  Thus, from the copy, the parties were unable to ascertain *when* Niblett began drafting the Executive Summary.  (Rec. Doc. 74-10).  Winn-Dixie explained it could not produce the original Executive Summary because Niblett no longer had the computer she used in 2012. (Rec. Doc. 74-8 at 1).

In response, Ralser requested on February 17, 2015 that Winn-Dixie identify a corporate representative to respond to a 30(b)(6) deposition "about Winn-Dixie's email system, data storage (drives) system, and document retention policies in late April and early May of 2012."

3

(Rec. Doc. 74-11 at 1).  On March 16, 2015, Winn-Dixie's counsel emailed Ralser's counsel and stated:

> Winn-Dixie's IT team was able to find the [Executive Summary] file on the backup of Ms. Niblett's N: drive.  Attached below is a snapshot of the screen from the backup file, showing that the original creation date of the document was February 3, 2012.  This is consistent with Ms. Niblett's testimony that to prepare Mr. Ralser's Executive Summary, she modified an earlier-created Executive Summary that her boss, VP Joey Medina, provided her.

(Rec. Doc. 74-13 at 1).

Ralser took the corporate deposition of Gary Klingerman, Winn-Dixie's Senior Director of IT Architecture, on May 13, 2015 and questioned him about the Executive Summary "screenshot."  (Rec. Doc. 74-11).  Klingerman testified that the screen shot of "Executive Summary—RRalser2" shows that the document was created on February 3, 2012, was modified on April 30, 2012 at 11:20 p.m., and was last accessed on August 1, 2014 at 7:50 p.m.  (Rec. Doc. 74-11 at 2).  Klingerman further testified that he could forensically image the document and produce it to Ralser.  (Rec. Doc. 74-11 at 4),

Ralser filed a motion to compel discovery, which was referred to Magistrate Judge Shushan, and sought (1) production of Winn-Dixie's servers to permit the data imaging of Niblett and Darby's network drives; (2) for Ralser's digital forensic experts to perform the imaging; (3) payment by Winn-Dixie for fees incurred for the imaging; and (4) document production related to certain requests.  (Rec. Doc. 69 at 1).  Magistrate Judge Shushan granted in part and denied in part Ralser's Motion to Compel and ordered the production of Winn-Dixie's servers to permit data imaging but ordered that a third-party vendor, and not Ralser's digital forensic experts, undertake the imaging of Niblett and Darby's network drives.  (Rec. Doc. 69 at

4-6). Realizing that such a production would prove costly, Winn-Dixie offered to stipulate that it could not "conclusively demonstrate that Karena Niblett began preparing the Executive Summary for Richard Ralser prior to when Mr. Ralser notified her of his need for leave on April 30, 2012." (Rec. Doc. 77-7 at 2). In line with this stipulation, Winn-Dixie indicated it would not assert as evidence the timing of when Niblett began preparing the Executive Summary. (Rec. Doc. 77-2 at 2). Ralser declined Winn-Dixie's proposal, and the parties went forth with the imaging of the servers.

The third-party vendor delivered a zip file to Ralser on August 3, 2015 containing the servers' images. Ralser's digital forensic experts conducted a preliminary analysis and concluded that there was no evidence that "Executive Summary – RRalser(2)" file was created before April 30, 2012 at 11:31 p.m. (Rec. Doc. 74-17 at 1).

### A. Ralser's Spoliation Motion for Sanctions (Rec. Doc. 74)

Ralser now moves the Court to find that Winn-Dixie intentionally altered, destroyed, or failed to preserve the Executive Summary prepared by Niblett resulting in prejudice to Ralser's claim and asks the Court to sanction Winn-Dixie "in the form of a finding of fact that [Winn-Dixie] never contemplated terminating Ralser prior to his request for leave under the Family Medical Leave Act." (Rec. Doc. 74 at 1). Ralser argues that Winn-Dixie "has continuously attempted to discourage Ralser from exploring confirmation of its management's testimony and accounts about the timing of Ralser's termination through verification of the originating Word document and email exchanges of it." (Rec. Doc. 74-3 at 13). Ralser highlights that the screenshot of "Executive Summary – RRalser(2).doc" purports to show a creation date of February 3, 2012, but the forensic experts concluded that the creation date was April 30, 2012,

5

and Winn-Dixie offers no credible explanation for this discrepancy.  (Rec. Doc. 74-1 at 13).  Ralser contends that there are two possible explanations: (1) the "Executive Summary – RRalser(2) was created on April 30, 2012, or (2) Winn-Dixie has failed to comply with the its own litigation hold and preserve evidence.  (Rec. Doc. 74-1 at 13).

    Ralser avers that "[o]nce a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents.  (Rec. Doc. 74-3 at 14) (citing *Zubulake v. UBS Warburg, LLC*, 220 F.R.D. 212, 216 (S.D.N.Y 2003)).  Further, Ralser argues that "[t]he failure to preserve relevant evidence pursuant to a litigation hold impacting a party's ability to offer 'proof of an issue at trial can support an inference that the evidence would have been unfavorable to the party responsible for the destruction.'"  (Rec. Doc. 74-3 at 14) (quoting *Zubulake*, 202 F.R.D. at 216).  Ralser thus argues Winn-Dixie had notice of Ralser's litigation intentions within days of Ralser's termination and failed, despite Winn-Dixie's record retention polices and backup procedures, to preserve the Executive Summary drafts created prior to April 30, 2012.  (Rec. Doc. 74-3 at 14).  Based on this information, Ralser concludes that either Winn-Dixie destroyed prior drafts or such drafts never existed.  (Rec. Doc. 74-3 at 15).  Ralser argues that a sanction in the form of an adverse finding is appropriate because Winn-Dixie exercised sole control over the evidence; it had multiple opportunities to search and produce the materials; and Winn-Dixie has made numerous inaccurate representations.  (Rec. Doc. 74-3 at 15).  Because Winn-Dixie's own protocol required retention of the "Executive Summary – RRalser(2).doc," Ralser argues the failure to follow such protocol should be construed as intentional.  (Rec. Doc. 74-3 at 15-16).

    **B.  Winn-Dixie's Opposition (Rec. Doc. 77)**

6

Winn-Dixie opposes the motion. Winn-Dixie provides a summary of its document retention system as described by Klingerman during his corporate deposition. Winn-Dixie explains that every document in Winn-Dixie's computer system falls under a particular retention policy, which in turn, determines how many prior versions of the document will be retained and for how long the most recent and prior versions of the document will be retained. (Rec. Doc. 77 at 3). The "Executive Summary – RRalser(2).doc" fell under the "Division Domain" retention policy, which provides for up to four total versions of the document – the most recent version and up to three previous versions – to be retained for 365 days. (Rec. Doc. 77 at 3). After the first year, all earlier versions of a document are deleted from the system and only the most recent version is retained. (Rec. Doc. 77 at 3). Winn-Dixie thus argues that the deletion of prior versions of "Executive Summary – RRalser(2).doc" was pursuant to this policy because all prior versions of "Executive Summary – RRalser(2).doc" should have been deleted on April 30, 2013, and Ralser filed this suit on May 8, 2013. (Rec. Doc. 77 at 3).

Winn-Dixie avers there is no evidence that Ms. Niblett engaged in bad faith or destroyed any electronic documents. Rather, Winn-Dixie maintains that Niblett was under the impression that only the most recent version remained accessible to her on the N: drive, and Niblett thus produced the most recent version of "Executive Summary – RRalser(2).doc" to Winn-Dixie's legal department. (Rec. Doc. 77 at 6). Even if Winn-Dixie negligently failed to preserve an electronic copy of that document, Winn-Dixie maintains there is an "insufficient basis" for the Court to conclude that Winn-Dixie engaged in intentional, bad-faith conduct. (Rec. Doc. 77 at 6).

If this Court finds Winn-Dixie acted in bad faith, Winn-Dixie argues that the evidence at issue would not support the inference Ralser seeks, that Winn-Dixie never contemplated discharging him before he requested FMLA leave.  (Rec. Doc. 77 at 7).  Winn-Dixie emphasizes that the missing electronic versions may have supported Winn-Dixie's position that it contemplated Ralser's termination prior to his FMLA leave request.  (Rec. Doc. 77 at 7).  Winn-Dixie thus argues that the "adverse inference plaintiff seeks [ ] is much broader than simply challenging when Ms. Niblett began preparing the Executive Summary."  Winn-Dixie argues this is further evidenced by the fact that after Magistrate Judge Shushan's order, Winn-Dixie offered to stipulate, in exchange for not having to undertake the costly imaging project, that Winn-Dixie would not offer the timing of when Ms. Niblett began the Executive Summary as evidence of when the decision was made to discharge Ralser.  (Rec. Doc. 77 at 8).  Ralser rejected this offer, and Winn-Dixie argues that Ralser now seeks a broad finding that goes beyond what the evidence in question would show.

### C.  Ralser's Reply (Rec. Doc. 81)

Ralser replies with leave of Court.  Ralser argues that Winn-Dixie created the present issue of when Winn-Dixie resolved to terminate Ralser because Winn-Dixie admitted in its discovery responses, dated January 16, 2015, that Winn-Dixie reached this decision on April 30, 2012.  (Rec. Doc. 81-1 at 1-2).  Two weeks later, Ralser contends, Niblett and Darby contradicted this response and testified that they reached this decision prior to April 30, 2012. (Rec. Doc. 81-1 at 2).  Ralser thus argues "[t]hat claimed testimony inspired the necessary investigation to trace the true genesis of the file, leading to repeated misrepresentations and obfuscations by Defendant…."  (Rec. Doc. 81-1 at 2).

8

Ralser next argues that there is no evidence that Niblett complied with the discovery hold because Winn-Dixie fails to identify when Niblett handed over those documents. (Rec. Doc. 81-1 at 3). Rather, Ralser contends that Niblett handed over the documents in response to Winn-Dixie's investigation of Ralser's claim. (Rec. Doc. 81-1 at 2). Ralser further argues that Niblett made no effort to preserve her electronic records, as required by Winn-Dixie's own policies. (Rec. Doc. 81-1 at 3).

Ralser argues that the evidence could have affirmatively proven the falsehood of the February 3, 2012 creation date and proven evidence tampering. (Rec. Doc. 81-2 at 6). Ralser also avers that Winn-Dixie's proposed stipulation would not cure the prejudice created by the missing evidence because Ralser is still unable to explore Niblett and Darby's credibility regarding the timing of when they decided to terminate him. (Rec. Doc. 81-2 at 5). During oral argument, Ralser's counsel represented that he believes the Executive Summary in its native format would have shown that Niblett created the document on April 30, 2012.

### III.  LAW AND ANALYSIS

Since this case is before the Court pursuant to this court's diversity jurisdiction, the Court applies federal evidentiary rules rather than state spoliation laws. *Condrey v. SunTrust Bank of Georgia,* 431 F.3d 191, 203 (5th Cir.2005) (citing *King v. Ill. Cent. R.R.,* 337 F.3d 550, 556 (5th Cir.2003)); *Lafayette Ins. Co. v. CMA Dishmachines,* No. 03–1098, 2005 WL 1038495, at *3 (E.D.La. Apr. 26, 2005) (Vance, C.J.). Under Rule 37, a court may issue an order imposing an array of sanctions if a party "fails to obey an order to provide or permit discovery." Fed. R. Civ. Proc. 37(b)(2)(A). Here, where the alleged conduct occurred prior to the commencement of litigation, federal law provides that a trial court may exercise its discretion to impose sanctions

on a party responsible for the spoliation (i.e. intentional destruction) of relevant evidence. *Menges v. Cliffs Drilling Company*, No. 99-2150, 2000 WL 765082, at *1 (E.D. La. June 12, 2000) (Vance, C.J.). *See also Rimkus Consulting Group, Inc. v. Cammarata*, 688 F. Supp. 2d 598, 612 (S.D. Tex. 2010) ("Spoliation is the destruction or the significant and meaningful alteration of evidence."). "Adverse inference sanctions "are properly viewed as among the most severe sanctions a court can administer." *Spencer v. Hercules Offshore, Inc.,* No. No. 13-4706, 2014 WL 1681736, at *4 (E.D. La. Apr. 28, 2014) (Vance, C.J.).

For the spoliation of evidence doctrine to apply, the movant must prove two elements: (1) that the party having control over the evidence had a duty to preserve the evidence at the time it was destroyed; and (2) that the destruction of evidence was intentional. *Garnett v. Pugh*, 2015 WL 1245672, at *4 (E.D. La. March 18, 2015) (Barbier, J.); *Menges*, 2000 WL 765082, at *2. "A duty to preserve arises when a party knows or should know that certain evidence is relevant to pending or future litigation." *Premier Dealer Servs., Inc. v. Duhon*, No. 12-1498, 2013 WL 6150602, at *3 (E.D. La. Nov. 22, 2013) (Roby, M.J.). *See also Dixon v. Greyhound Lines, Inc.*, 2014 WL 6087226, at*2 (M.D. La. Nov. 13, 2014) ("The duty to preserve material evidence arises not only during litigation, but also during the period before litigation when a party knew or should have known that litigation was imminent."); *Garnett*, 2015 WL 1245672, at *4 ("In order for a party to have a duty to preserve evidence, the party must have notice that the evidence is relevant to the litigation."). Further, it is well settled within the Fifth Circuit that an adverse inference drawn from the destruction of records is predicated on bad faith. *United States v. Wise*, 221 F.3d 140, 154 (5th Cir. 2010); *King v. Illinois Cent. R.R.*, 337 F.3d 550, 556 (5th Cir. 2003); *Vick v. Texas Employment Commission*, 514 F.2d 734, 737 (5th Cir. 1975). "Culpability is not

established by any bright line test, but rather, analyzed on a case-by-case basis." *Premier Dealer Servs., Inc.*, 2013 WL 6150602, at 5.

Winn-Dixie concedes that it was aware that Ralser intended to pursue a wrongful termination suit no later than May 31, 2012 and instituted a litigation hold on that date. (Rec. Doc. 77 at 2). The Court thus finds that Winn-Dixie had a duty to preserve the document in question, so the thrust of the Court's analysis will focus on whether this destruction occurred in bad faith, and the facts do not support such a finding. Niblett turned over all paper documents, and she forwarded an electronic version of the "Executive Summary – RRalser(2).doc" to the Winn-Dixie legal department. Such action would seemingly fulfill her duties under the litigation hold, and it was not obvious that she would need to preserve, or that she even had access to, prior versions of the document. Further, it was Winn-Dixie's IT Department, and not Niblett, who was charged with implementing any change to the electronic document retention system.

By the time Ralser filed this lawsuit, on May 8, 2013, a year had passed and any prior version of the document would have been destroyed pursuant to Winn-Dixie's document retention policy. While this destruction still occurred during the litigation hold, the fact that Winn Dixie's normal retention policy called for the document's destruction undermines a finding of bad faith because Winn-Dixie's failure to adjust the document retention system to comply with the litigation hold signified an omission, and not a commission. In other words, Winn-Dixie's failure to retain the electronic document was not the result of a directed action to delete the document but rather a failure to turn off the automatic deletion mechanism. Such action, at best, amounts to negligence and does not rise to the level of bad faith. Based on these facts, the Court does not find bad faith on the part of Winn-Dixie or its employees. The Court will

11

nevertheless allow the parties to admit evidence of these discovery issues and Winn-Dixie's failure to comply with the litigation hold during trial.

## IV.    CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Plaintiff Ralser's Spoliation Motion for Sanctions (Rec. Doc. 74) is hereby **DENIED**.

New Orleans, Louisiana this 21st day of August 2015.

_____
UNITED STATES DISTRICT JUDGE