UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **RICHARD RALSER** | * | **CIVIL ACTION** |
| | * | |
| **versus** | * | **No. 13-2799** |
| | * | |
| **WINN DIXIE STORES, INC. A/K/A BI-LO HOLDINGS** | * | **SECTION "L" (1)** |

## ORDER & REASONS

Before the Court is Defendant Winn Dixie Stores, Inc.'s ("Winn Dixie") Motion for Summary Judgment. (R. Doc. 73). The Court has reviewed the briefs and the applicable law, and the Court now issues this Order & Reasons.

### I.   BACKGROUND

This case involves a claim made by Plaintiff Richard Ralser against Winn Dixie under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601. The FMLA provides for twelve workweeks of leave to an eligible employee during any twelve month period so long as the employee experiences one of four possible life events entitling him to such leave. *See* 29 U.S.C. § 2612(a)(1) (2012). The FMLA also prohibits employers from interfering with the exercise of this right, or by discriminating or retaliating against those who assert it. *See* 29 U.S.C. § 2615(a) (2012).

1

Ralser alleges both retaliation[1] and interference on the part of Winn Dixie. (R. Doc. 1 at 4). According to Ralser's complaint, filed on May 8, 2013, Ralser was hired by Winn Dixie in April 2011. (R. Doc. 1 at 2). Ralser claims that on April 30, 2012, he informed his supervisors that he needed to take a medical leave of absence because his treating orthopedic specialist recommended that he undergo a hip replacement surgery. (R. Doc. 1 at 2). Later that day, Ralser's supervisor, Karena Niblett, emailed a document to her supervisor, Joey Medina, recommending Ralser's termination. (R. Doc. 74-5). Winn Dixie no longer has access to the native version of the document in question, "Executive Summary – RRalser (2).doc." This Court concluded in its Order and Reasons denying Ralser's Motion for Sanctions that, at best, the loss of the document could be attributed to Winn Dixie's negligence. (R. Doc. 89 at 11).

Ralser was terminated on May 8, 2012. (R. Doc. 1 at 3). In its defense, Winn Dixie asserts that the decision to terminate Ralser occurred after Niblett and Medina completed a walkthrough of Ralser's store, on either April 19 or 20, 2012. (R. Doc. 73-6 at 4). The testimony of three Winn Dixie managers constitutes the only evidence of the timing of this decision. (R. Doc. 78 at 19). Winn Dixie states that Niblett and Medina agreed on the termination because of the subpar performance of both Ralser and his store. (R. Doc. 73-6 at 7).

## II.   PRESENT MOTION

Winn Dixie moves for summary judgment on Ralser's FMLA claims of retaliation and interference. (R. Doc. 73-1 at 2). Winn Dixie claims that summary judgment should be granted

---

[1] Ralser's Complaint technically alleges a *discrimination* claim, not a retaliation claim. (R. Doc. 1 at 4). Both claims are viable under the FMLA. *See Mauder v. Metro. Transit Auth. of Harris Cnty., Tex.*, 446 F.3d 574, 580 (5th Cir. 2006) (acknowledging that both retaliation and discrimination are actionable under the FMLA); *see also* 29 C.F.R. § 825.220(c) (2013). Given that both parties characterize the claim as a retaliation claim in their briefs, the Court will adopt the language of retaliation in this Order.

2

because Ralser cannot establish a *prima facie* case for either claim.  (R. Doc. 73-1 at 2).  Winn Dixie also contends that Ralser cannot demonstrate pretext regarding the retaliation claim.  (R. Doc. 73-1 at 2).  While not conceding the *prima facie* case or pretext in the retaliation claim, Winn Dixie also raises an affirmative defense of mixed-motives.  (R. Doc. 73-1 at 2).

### A.  Winn Dixie's Motion for Summary Judgment (R. Doc. 73)

Winn-Dixie argues that it is entitled to summary judgment on the grounds that Ralser cannot meet the *prima facie* burden for an FMLA retaliation suit.  (R. Doc. 73-6 at 3–7).  Winn Dixie asserts that Ralser failed to identify a similarly situated employee who received different treatment.  (R. Doc. 73-6 at 3–4).  Winn Dixie further states that Ralser cannot satisfy the minimum requirements of a "causal connection" for the purpose establishing a *prima facie* case.  (R. Doc. 73-6 at 4).  Winn Dixie agrees that either of these methods would be sufficient to meet Ralser's initial burden.  (R. Doc. 73-6 at 3–4).

Winn Dixie focuses on the causal connection method of meeting the *prima facie* case in its brief, (R. Doc. 73-6 at 3–7), and argues that the close temporal proximity between Ralser's termination and his request for leave are irrelevant.  (R. Doc. 73-6 at 4–5).  According to Winn Dixie, the decision to terminate Ralser occurred prior to Ralser's request for FMLA leave.  (R. Doc. 73-6 at 4).  This claim is factually bolstered by the testimony of the two Winn Dixie employees who made the decision.  (R. Doc. 73-6 at 6–7).  Winn Dixie cites Fifth Circuit precedent and contends that Ralser's causality argument fails, because Winn Dixie scheduled the termination before Ralser requested leave.  *Gonzales v. J.E. Merit Constructors, Inc.*, No. 00-30584, 2001 WL 803545, at *3 ("Obviously, an employer cannot retaliate against an employee

3

for engaging in a protected activity that it did not know about at the time of the challenged action.").

Winn Dixie further argues that Ralser's reliance on metadata drawn from Winn Dixie's internal memoranda cannot satisfy his *prima facie* burden. According to the metadata, the Executive Summary which electronically recorded the termination decision was "created" on February 3, 2012 and last "modified" on April 30, 2012 at 11:28 p.m. (R. Doc. 73-6 at 5). Ralser notified Winn Dixie of his intent to take FMLA leave earlier in the day on April 30. (R. Doc. 73-6 at 4). Winn Dixie characterizes this metadata as "inconclusive." (R. Doc. 73-6 at 5).

Winn Dixie also contends that it is entitled to summary judgment because Ralser cannot demonstrate pretext. Emphasizing Ralser's emphasis on the suspicious timing of his termination, Winn Dixie states that temporal proximity is insufficient to establish pretext under *McDonnell Douglas*. Winn Dixie cites unpublished Fifth Circuit precedent for this assertion. (R. Doc. 73-6 at 8 (citing *Wilson v. Noble Drilling Servs., Inc.*, 405 Fed. Appx. 909, 914 (5th Cir. 2010) (unpublished))). Winn Dixie also contends that unpublished Fifth Circuit precedent suggesting that temporal proximity alone is sufficient to demonstrate pretext was wrongly decided. (R. Doc. 73-6 at 8 (clarifying *Baumeister v. AIG Global Inv. Corp.*, 420 Fed. Appx. 351, 356 (5th Cir. 2011) (unpublished))).

After arguing that temporal proximity alone is insufficient to establish pretext, Winn Dixie avers that Ralser cannot identify any non-temporal evidence of pretext. Winn Dixie notes that Ralser believed Winn Dixie was motivated to discriminate against employees requesting FMLA leave because of financial troubles associated with Winn-Dixie's bankruptcy. (R. Doc. 73-6 at 8 (citing Pl. Depo. P. 122 11. 2 – 16)). In his deposition, Ralser admitted that he had no

4

facts to support his bankruptcy theory of discrimination. (R. Doc. 73-6 at 8 (citing Pl. Depo. P. 124 11. 2–16)).

Regarding Ralser's FMLA interference claim, Winn Dixie also maintains that it is entitled to summary judgment because Ralser cannot meet the applicable *prima facie* case. (R. Doc. 73-6 at 11–12). Specifically, Winn Dixie states that Ralser cannot prove that he was entitled to FMLA leave. (R. Doc. 12). Winn Dixie argues that FMLA interference claims are extinguished if the employee was not entitled to FMLA leave, and that employees who are slated for termination for legitimate employment reasons do not qualify as entitled. Winn Dixie contends that Ralser's inability to meet this burden extinguishes his claim. (R. Doc. 73-6 at 11–12). Winn Dixie supports its motion for summary judgment with the testimony of Winn Dixie officers. The officers state that Ralser was scheduled for termination before he requested leave. (R. Doc. 73-6 at 12).

### B. Ralser's Opposition (R. Doc. 78)

Ralser opposes all of Winn Dixie's motions for summary judgment. (R. Doc. 78 at 1). Ralser begins by arguing that his proffered evidence meets the *prima facie* case for both the discrimination and interference FMLA claims. (R. Doc. 78 at 12–21). Ralser highlights the temporal proximity between his request for FMLA leave and his termination. (R. Doc. 78 at 12–13). Ralser contends that "very close" temporal proximity between a request for FMLA leave and an adverse employment decision is sufficient to meet his *prima facie* burdens. (R. Doc. 78 at 12–13). Ralser cites a case from the Middle District of Louisiana and a case from the Supreme Court for support; both suggest that a plaintiff can satisfy the *prima facie* case by a showing of

temporal proximity alone.  *See Clark County School Distr. v. Breeden*, 532 U.S. 268, 273 (2001); *Picard v. Louisiana ex. Rel. Dept. of Justice*, 931 F.Supp.2d 731, 738–739 (M.D. La. 2013).

Ralser also contests Winn Dixie's assertion that Ralser is incapable of proving pretext. Ralser avers that he can prove pretext by showing that Winn Dixie's proffered explanation is false or "unworthy of credence."  (R. Doc. 78 at 13 (citing *Laxton v. Gap, Inc.*, 333 F.3d 572 (5th Cir. 2003) (internal citations omitted)).  Ralser suggests that he can prove Winn Dixie's explanation is pretextual because of the close timing involved and the lack of evidentiary support for Winn Dixie's decision to terminate.  (R. Doc. 78 at 13).  Ralser notes that Winn Dixie provided conflicting accounts of its documentation of the decision to terminate Ralser, and that key documents associated with Ralser's termination were allegedly destroyed while trial was pending. (R. Doc. 78 at 14–15).

Ralser also suggests that Winn Dixie's termination decision suspiciously deviates from its own policies.  (R. Doc. 78 at 17–18).  Ralser states that Winn Dixie ignored store policy by not providing him with "progressive warnings."  (R. Doc. 78 at 17).  Ralser also notes that Niblett directed him to prepare a SMART Action Plan on March 30, 2012, in order to mark his performance, but that Niblett terminated Ralser before she could analyze the first thirty-day review period of the plan.  (R. Doc. 78 at 17).  Winn Dixie conceded to Ralser in discovery that Niblett believed she could "course correct" Ralser's poor performance by issuing a Corrective Action Report as late as April 12, 2012.  (R. Doc. 78 at 19).

Ralser further contends that summary judgment is inappropriate while his experts are examining ESI data produced on August 3, 2015.  (R. Doc. 78 at 20–21).  The Court ultimately

6

granted leave for Ralser to file a sur-reply, which contained Ralser's completed ESI analysis. (R. Doc. 93).

Ralser opposes Winn-Dixie's assertion that he cannot prove a *prima facie* case regarding the interference claim. (R. Doc. 78 at 21). Citing the evidence which allegedly satisfies Ralser's *prima facie* case regarding the retaliation claim, Ralser argues that there are genuine issues of material fact concerning the timing of Winn Dixie's decision to terminate Ralser. (R. Doc. 78 at 21). Thus, Ralser posits that summary judgment on the interference claim is inappropriate.

### C. Winn Dixie's Reply (R. Doc. 87)

Winn Dixie replies with leave of Court. Winn Dixie contests Ralser's characterization of the discovery process. (R. Doc. 87 at 1). Winn Dixie emphasizes its chronology of Ralser's termination and argues that this nullifies Ralser's "temporal proximity" argument.

Winn Dixie also distinguishes case law provided by Ralser which suggests that temporal proximity alone can meet a *prima facie* case or establish pretext. (R. Doc. 78 at 14). In essence, Winn Dixie claims Ralser's citations are inapposite on the facts. According to Winn Dixie, the recorded strong work performance of the terminated employee bolstered both the *prima facie* case and evidence of pretext in each case. (R. Doc. 78 at 2–3). Winn Dixie also emphasizes its position that the Court cannot second guess Winn Dixie's termination decision so long as it was not motivated by improper grounds. (R. Doc. 78 at 3–4).

### D. Ralser's Reply (R. Doc. 93)

Ralser replies with leave of Court. Ralser's ESI provides circumstantial evidence of dishonesty by Winn Dixie regarding the creation and deletion of Niblett's Executive Summary. (R. Doc. 93 at 1–2).

7

### III. LAW AND ANALYSIS

#### A. Applicable Standards

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id.* When considering a motion for summary judgment, the district court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). Summary judgment is not appropriate when "questions about the credibility of key witnesses loom . . . large" and the evidence could permit the trier-of-fact to treat their testimony with "skeptical scrutiny." *Deville v. Marcantel*, 567 F.3d 156 (5th Cir. 2009) (*citing Thomas v. Great Atl. & Pac. Tea Co.*, 233 F.3d 326, 331 (5th Cir. 2000)).

#### B. Ralser's *Prima Facie* Case of Retaliation

The *prima facie* case for discrimination or retaliation claims is based on the elements articulated in *McDonnell Douglas*. *Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir. 2005). Under this framework,

> [plaintiff] must first establish a prima facie case of retaliation by showing: (1) he was protected under the FMLA; (2) he suffered an adverse employment decision;

and either (3a) he was treated less favorably than an employee that had not requested FMLA leave; or (3b) the adverse decision was made because he took FMLA leave.

*Harrelson v. Lufkin Indus.*, No. 14-41458, 2015 WL 3941905, at *2 (5th Cir. June 29, 2015) (citing *Hunt v. Rapides Healthcare Sys. LLC*, 277 F.3d 757, 768 (5th Cir. 2001)). Neither the first nor the second prongs of Ralser's *prima facie* case are contested. However, Winn Dixie asserts that Ralser has not identified a similarly situated employee, and Ralser does not contest this in his Opposition. (R. Doc. 78). Thus, Ralser's *prima facie* case hinges on the existence of a causal connection between Winn Dixie's adverse employment decision and Ralser's request for FMLA leave.

### 1. Temporal Evidence of Causation

Temporal proximity alone can establish a *prima facie* case that an adverse decision was made because of a request for FMLA leave, but the timing must be "very close." *Clark County School Dist. v. Breeden*, 532 U.S. 268, 273 (2001); *see also Swanson v. GSA*, 110 F.3d 1180, 1188 (5th Cir. 1997) ("Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a *prima facie* case of retaliation."). Winn Dixie concedes this point, as it cited *Breeden* for this proposition in its Memorandum in Support of Motion for Summary Judgment. (R. Doc 73-6 at 8 n.3).

The Court finds that the temporal evidence, when viewed in the light most favorable to Ralser, is sufficient to support a *prima facie* case of retaliation. Niblett formally recommended

9

Ralser for termination on April 30, 2012, the same day that he requested FMLA leave.  (R. Doc. 78 at 14).  If the Fifth Circuit's determination that temporal proximity alone can meet the *prima facie* burden has any weight, *Breeden* and its progeny must support a finding that a same-day termination following a request for leave meets the initial burden of *McDonnell Douglas*.  *Breeden*, 532 U.S. at 273; *see also Baumeister v. AIG Global Inv. Corp.*, 420 Fed. Appx. 351, 356 (5th Cir. 2011) (unpublished).

Winn Dixie's proposed factual timeline is unavailing.  Winn Dixie contends that Ralser's *prima facie* case fails because the discharge decision occurred on either April 19 or 20, 2012, ten or more days before Ralser announced his intent to take leave.  But Winn Dixie presents no clear factual evidence supporting their account.  Winn Dixie's counter to the tight temporal proximity shown by Ralser mainly rests on the credibility of their witnesses, and summary judgment is not appropriate when "questions about the credibility of key witnesses loom[s] . . . large."  *Deville v. Marcantel*, 567 F.3d 156 (5th Cir. 2009) (*citing Thomas v. Great Atl. & Pac. Tea Co.*, 233 F.3d 326, 331 (5th Cir. 2000)).

Aside from the testimony of Ralser's superiors, the only affirmative evidence Winn Dixie provides of its timeline is the metadata underlying the "created" date of Ms. Niblett's Executive Summary.  (R. Doc. 73-6 at 5–6).  This metadata is "inconclusive," as conceded by Winn Dixie.  (R. Doc. 73-6 at 5).  Simply put, inconclusive data cannot undermine the tight temporal proximity between Ralser's request for leave and his termination.

### 2. Additional Evidence of Causation

When suspicious timing is insufficient to satisfy a plaintiff's *prima facie* case, the plaintiff can meet his or her burden by putting forward circumstantial evidence of discrimination.

*Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 409 (5th Cir. 1999). If temporal proximity alone cannot sustain Ralser's burden, Ralser provides limited, but sufficient, additional circumstantial evidence of a causal connection in his Opposition.

Winn Dixie retains the right to immediately terminate employees. However, Winn Dixie also maintains a policy of progressive warnings in the absence of gross employee misconduct. (R. Doc. 78-3, at 19). The facts, when viewed in the light most favorable to Ralser, suggest that Winn Dixie deviated from this policy. On March 28, 2012, Niblett ordered Ralser to prepare a SMART Action Plan for the purpose of tracking his performance over a ninety-day period. (R. Doc. 78, at 17). Niblett formally moved to terminate Ralser on April 30, 2012, long before she could evaluate Ralser under the SMART Action Plan. (R. Doc. 78, at 17). Ralser also presents evidence that Winn Dixie believed it could "course correct" Ralser's poor performance by issuing a Corrective Action Report as late as April 12, 2012. (R. Doc. 78, at 19). However, Ralser's job security on April 12, 2012, appears more than tenuous from the Record. This Corrective Action Report was his third in three months and marked as a "Final Written Warning." (R. Doc. 83-2 at 54). Ralser also refused to sign the document in question due to a disagreement regarding its characterization of his culpability for the incident. (R. Doc. 73-3 at 3, 5).

Fifth Circuit precedent holds that this evidence cannot be considered insofar as it disputes the underlying facts of Winn Dixie's termination decision. Neither can it be used to argue that Winn Dixie made an incorrect decision. *See Ray v. United Parcel Serv.*, 587 F. App'x 182, 192 (5th Cir. 2014); *LeMaire v. Louisiana Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir.

11

2007). However, it can still be used to support Ralser's case at the *prima facie* phase. Winn Dixie's progressive plan to discipline Ralser for on-the-job errors supports the conclusion that something other than performance deficiencies caused Winn Dixie to deviate from the SMART Action Plan. This Court finds that Ralser has satisfied the burden of proving causation at this phase of the case.

### C. Ralser's Burden of Proving Pretext

Once the plaintiff and defendant have satisfied their initial burdens under the *McDonnell Douglas* framework,[2] the burden shifts back to the plaintiff to demonstrate that the employer's proffered reason is mere pretext. *See Ray*, 587 F. App'x at 191. (R. Doc. 73-6 at 7). Thus, Ralser must present evidence creating a fact issue that Winn Dixie's legitimate, nondiscriminatory reason is "false or unworthy of credence." *Vaughn v. Woodforest Bank*, 665 F.3d 632, 637 (5th Cir. 2011).

The Fifth Circuit holds that temporal proximity is relevant evidence at the pretext stage of *McDonnell Douglas*. *See Ray*, 587 F. App'x at 193; *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, (5th Cir. 1999); *see also Tapia v. Michaels Stores, Inc.*, 553 F.Supp.2d 708 (W.D. TX 2008). Winn Dixie concedes that the Executive Summary memorializing Ralser's termination was completed the same day that he requested FMLA leave, (R. Doc. 73-7 at 6), and Winn Dixie's proof of an alternative timeline rests solely on the unsubstantiated testimony of Ralser's

---

[2] Winn Dixie's proffered legitimate, non-discriminatory reason is that both Ralser and his store were performing unsatisfactorily. ((R. Doc. 73-6 at 7). The Court finds this rationale acceptable to satisfy Winn Dixie's burden of production under the *McDonnell Douglas* framework. *Harrelson v. Lufkin Indus.*, No. 14-41458, 2015 WL 3941905, at *2 (5th Cir. June 29, 2015) (citing *Hunt v. Rapides Healthcare Sys. LLC*, 277 F.3d 757, 768 (5th Cir. 2001)).

12

superiors. (R. Doc. 73-6 at 6–7). Thus, to the extent that temporal proximity can factually buttress a claim of retaliation, Ralser must receive the maximum possible temporal weight. However, temporal proximity alone cannot create a fact issue of pretext for purposes of summary judgment in the Fifth Circuit. *See Wilson v. Noble Drilling Servs.,Inc.*, 405 Fed. Appx. 909, 914 (5th Cir. 2010) (unpublished) (citing *Swanson v. GSA*, 110 F.3d 1180, 1188 (5th Cir. 1997).

Nevertheless, Ralser's circumstantial evidence of causation is pertinent to his burden of proving pretext. The ninety-day Smart Action PLAN initiated on March 28, 2012, and the Corrective Action Report, dated April 12, 2012, both suggest that Winn Dixie planned to monitor Ralser's work performance in the short-term and expected a favorable result. Winn Dixie's assertion that Niblett and Medina decided to terminate Ralser on April 20, 2012, appears somewhat suspicious when framed against this background.[3]

Ralser also argues that Winn Dixie's failure to retain important documents, as well as ESI derived from the documents they did retain, supports a finding of pretext. Regarding the former, this Court concluded in its Order and Reasons denying Ralser's Motion for Sanctions (R. Doc. 89) that the disappearance of key documents in this case should be construed, at best, as negligence on the part of Winn Dixie. (R. Doc. 89 at 11). The standard for proving the intentional destruction of evidence is a very high one, *see Garnett v. Pugh*, 2015 WL 1245672, at

---

[3] The Court appropriately limits the reach of this evidence. It is well established in the Fifth Circuit that a *McDonnell Douglas* plaintiff cannot attack the factual basis of an employer's termination decision in order to prove pretext. *See Ray*, 587 F. App'x at 191–92 ) (citing *Haverda v. Hays County*, 723 F.3d 586, 596 n.1 (5th Cir. 2013). Second-guessing the grounds for a termination decision is inappropriate, as even an unwise or factually unsound termination decision by Winn Dixie does not constitute retaliation. *See LeMaire v. Louisiana Dept. of Transp. and Development*, 480 F.3d 383, 391 (5th Cir. 2007) ("[The Plaintiff] must do more than . . . argue that [Defendant] made the wrong decision in order to survive summary judgment."). Thus, this Court cannot use the SMART Action Plan or the Corrective Action Report to support a finding that Winn Dixie did not have grounds to terminate Ralser.

\*4 (E.D. La. March 18, 2015), and Ralser failed to satisfy this burden. Mere negligence cannot support a finding of pretext.

In contrast, Ralser's ESI, when viewed in the light most favorable to Ralser, casts some doubt on Winn Dixie's proffered timeline of the termination decision. *See Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986) (in a motion for summary judgment, the evidence should be construed in favor of the non-moving party). First, the ESI questions Winn Dixie's account of the location of Niblett's Executive Summary. Winn Dixie avers that the only document which substantiates the existence of Niblett's Executive Summary, "Executive Summary – RRalser (2).doc," was retrieved from an email forwarded to Winn Dixie's legal department. (R. Doc. 77, at 2–3). Ralser's ESI analysis concludes that the document was not extracted from a forwarded email. (R. Doc. 93, at 1). Further, Ralser's experts were unable to locate the forwarded email in Winn Dixie's files, despite the use of parameters which allegedly should have identified the email. (R. Doc. 93, at 2). Both of these findings, when viewed favorably to Ralser, suggest either gross negligence or dishonesty on the part of Winn Dixie. Despite the fact that Ralser cannot prove material dishonesty, these inconsistencies do support a finding of pretext. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147–48 (2000) ("In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose.").

The Court finds that Ralser presents the following evidence of pretext on the part of Winn Dixie: weighty evidence of temporal proximity, ESI data suggesting limited inconsistencies in Winn Dixie's description of their document retention practices, and very slight

14

circumstantial evidence of intent to retain Ralser before he requested FMLA leave. Evidence of temporal proximity alone cannot sustain a finding of pretext. *See Wilson v. Noble Drilling Servs.,Inc.*, 405 Fed. Appx. 909, 914 (5th Cir. 2010) (unpublished) (citing *Swanson v. GSA*, 110 F.3d 1180, 1188 (5th Cir. 1997).

Winn Dixie characterizes Ralser's showing of pretext as unsupported conclusion and speculation. (R. Doc. 73-6 at 8). While at first blush, Ralser's evidence is supportive of establishing pretext, a closer analysis reveals fatal issues. Ralser's ESI analysis does not rise above the level of "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Davis v. Fort Bend County*, 765 F.3d 480, 484 (5th Cir. 2014) (citations omitted). The origin and development of Niblett's Executive Summary, "Executive Summary – RRalser (2).doc," is a crucial issue in this case. However, Ralser cannot prove that it was modified after-the-fact or intentionally deleted from Winn-Dixie's drive. (R. Doc. 93 at 2). His experts merely argue that the remaining copy of the Executive Summary did not come from an email, (R. Doc. 93 at 1), as claimed by Winn Dixie, and this inconsistency is "only a scintilla of evidence." *Davis* 765 F.3d at 484.

Case law cited by the parties supports this Court's finding. As noted in *Shackelford*, "the combination of suspicious timing with other significant evidence of pretext[] can be sufficient to survive summary judgment." *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398. 409 (5th Cir. 1999). Suspicious timing is present, but precedent does not support a finding that Ralser's proffered evidence is "significant." *Id.* For instance, the *Shackelford* court held that an employee proved pretext when she presented evidence discounting her employer's account of the

15

events leading up to her termination alongside highly suspicious timing.  *Id.* at 409–410.  The plaintiff in *Shackelford* relied on the testimony of her fellow employees and good performance evaluations, *id.*, and this evidence meaningfully differs from Ralser's use of ESI and reliance on the SMART Action Plan.  Simply put, the weight attributable to good performance reviews is much greater than the weight provided by Winn Dixie's progressive plan to review Ralser's performance.  Ralser does not appear to be the model employee: his first Corrective Action Report, dated February 7, 2012, states that Ralser told one of his subordinates that "I am not throwing you under the bus, but that I will run over you and leave tread marks."  (R. Doc. 73-2).  Further, the lenient decision to discipline Ralser with a ninety-day SMART Action Plan and a third Corrective Action Report, which was marked as a "Final Written Warning," occurred before Ralser refused to sign the proffered written warning and an expensive meat freezer malfunctioned in his store.  (R. Doc. 73-3 at3, 5).  While the timing of Ralser's termination is highly suspicious, the circumstantial evidence supplementing his temporal evidence is extraordinarily slight, particularly in view of the undisputed evidence of questionable performance even after being place on performance review.  It cannot support a finding of pretext.  *See Reeves*, 530 U.S. at 147–48.  Thus, Ralser fails to carry his burden of proving pretext.

### D.  Winn Dixie's Affirmative Defense of Mixed Motives

Winn Dixie argues in the alternative that even if Ralser can meet his *prima facie* case and present an issue of fact regarding pretext, Winn Dixie is entitled to summary judgment on a mixed-motives defense.  (R. Doc. 73-6 at 10).  In FMLA cases such as the one at bar, a showing

by the defendant that he or she would have taken the adverse action "regardless of" any improper motive acts as an affirmative defense. *See Ray*, 587 Fed. Appx. at 188–89, 196. However, the Fifth Circuit recently signaled that this standard may be ripe for review. *Harrelson v. Lufkin Indus., Inc.*, No. 14-41458, 2015 WL 3941905, at *2 (5th Cir. June 29, 2015) (declining to rule on whether the "but-for" standard of *University of Texas Southwestern Medical Center v. Nassar*, 133 S. Ct. 2517, 2534 (2013), applies to FMLA retaliation cases). Absent guidance to the contrary, this Court will continue to apply the "regardless of" standard used in *Ray*. 587 Fed. Appx. at 188–89, 196.

The Court finds, based on the facts presented in Part 2.C, *supra*, that Winn Dixie can prove that it intended to terminate Ralser regardless of his request for FMLA leave. Winn Dixie's actions, which possibly arise to negligence, caused the loss of most of the documentation which supports their argument. (R. Doc. 89 at 11). However, significant evidence remains of their intent to terminate Ralser. While the SMART Action Plan contemplated sixty additional days of evaluation, numerous events occurred after the institution of this plan which suggest Winn Dixie had reason to abandon verbal and written warnings. Ralser was issued a Corrective Action Report on April 12, 2012, which he refused to sign. (R. Doc. 73-7 at 3–4). This Corrective Action Report was his third Corrective Action Report in three months, and it was marked as a "Final Written Warning." (R. Doc. 83-2 at 54). The first of these Corrective Action Reports regarded Ralser telling a subordinate that "I am not throwing you under the bus, but that I will run over you and leave tread marks." (R. Doc. 73-2 at 41). Although vulnerable to bias, numerous witnesses attest that a walkthrough of Winn Dixie's store occurred on April 19th,

which was not favorable to Ralser. (R. Doc. 73-7 at 5).A meat freezer malfunctioned in his store, which carried the potential for significant losses. (R. Doc. 73-7 at 5). After carefully considering the preceding, the Court finds that Winn Dixie proves its affirmative defense.

### E. Ralser's *Prima Facie* Case of Interference

In the Fifth Circuit, an employer may defeat an interference claim by proving that the right to FMLA leave was extinguished before the employer requested the leave. *See Shirley v. Precision Castparts Corp.*, 726 F.3d 675, 682 (5th Cir. 2013) (citing *Grubb v. Southwest Airlines*, 296 Fed. Appx. 383, 391 (5th Cir. 2008)) ("Thus, although denying an employee the [leave] to which he is entitled generally violates the FMLA, denying [leave] to an employee whose right to [such leave] had already been extinguished – for legitimate reasons unrelated to his efforts to secure FMLA leave – does not violate the Act."); *see also Throneberry v. McGehee Desha County Hosp.*, 403 F.3d 972, 977 (8th Cir. 2005) ("[A]n employer who interferes with an employee's FMLA rights will not be liable if the employer can prove it would have made the same decision had the employee not exercised the employee's FMLA rights.").

The Court finds that Winn Dixie has presented sufficient evidence to show that Ralser's right to FMLA leave was no longer viable when he requested it from Niblett. As noted in Part III.D, *supra*, Winn Dixie lost most of the documentation which would satisfy a motion for summary judgment on this issue. (R. Doc. 89 at 11). Despite this possible negligence, Winn Dixie's evidence is sufficient. Ralser was issued a "Final Written Warning" in his Corrective Action Report on April 12, 2012. (R. Doc. 83-2 at 54). He refused to sign this report. (R. Doc.

73-7 at 3–4). This was his third Corrective Action Report in three months. (R. Doc. 73-2 at 41, 42). It bears repeating that the first of these Corrective Action Reports was given because Ralser told a subordinate that "I am not throwing you under the bus, but that I will run over you and leave tread marks." (R. Doc. 73-2 at 41). Furthermore, three witnesses verify that a walkthrough of Winn Dixie's store occurred on April 19th, which was not favorable to Ralser. (R. Doc. 73-7 at 5). Management was notified during the week of April 23, 2012, that a meat freezer malfunctioned in Ralser's store, which carried the potential for significant losses. (R. Doc. 73-7 at 5). All of this occurred before Ralser announced his intent to take leave on April 30, 2012, and Ralser can only point to the ninety-day plan of the Corrective Action Report and inconclusive ESI to counter Winn-Dixie's assertions.

## IV.   CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Winn Dixie's Motion for Summary Judgment (R. Doc. 73) is hereby **GRANTED**.

New Orleans, Louisiana this 11th day of September, 2015.

_____
UNITED STATES DISTRICT JUDGE